The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Bernadine S. Ballance. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time this claim arose, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all times relevant to this claim.
3. The carrier on the risk at all times relevant was Aetna Casualty Surety Company.
4. The plaintiff's average weekly wage was $206.25.
5. The recorded statement of plaintiff taken by Brenda Smith on August 16, 1993 was stipulated into evidence.
6. The office notes and medical records concerning the plaintiff from all treating physicians were stipulated into evidence.
7. The issue to be determined by the hearing is whether plaintiff's back injury was the result of a specific traumatic incident during a cognizable time period.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time this claim arose, plaintiff was thirty (30) years old, and had been employed as a certified nursing assistant (CNA) for Wilkes Senior Village for approximately six (6) months.
2. As a certified nursing assistant, plaintiff was responsible for attending to the patient's personal hygiene, medical needs and physical needs. Her duties included lifting patients from the bed to wheelchairs and from wheelchairs to the bed, dressing patients, feeding patients, and changing bed linens. Plaintiff's patients typically weighed between 90 and 200 pounds. On July 4, 1993 plaintiff arrived at her job at approximately 3:00 P.M. She and co-worker, Melanie Gilbreath, began working on their first "round" of approximately 30 patients. Her round which took about an hour to complete, consisted of checking and lifting patients, transferring some from wheelchairs to bed or from bed to wheelchairs and making sure all patients were dry and had dry linen.
3. Toward the end of plaintiff's first round, at approximately 4:00 P.M., plaintiff noticed pain in her lower back which radiated into her right leg and hip. Plaintiff had no previous history of back problems.
4. After completing her first round, plaintiff told Melanie Gilbreath that she thought she hurt her back. Plaintiff asked the charge nurse on duty for Tylenol to alleviate the pain in her back. Plaintiff's supervisor was present at said time. Plaintiff then returned to work and finished her shift.
5. On July 5, 1994, plaintiff's next scheduled work day, she could hardly get out of bed due to the pain in her back and right thigh. Plaintiff called in to her job and reported her work-related injury to her supervisor, Reba Freeman, and further advised that she would not be able to come to work. Plaintiff sought treatment with her family doctor. Plaintiff was treated instead by Dr. Kirk D. Gulden because Dr. Thomas Frazer, her regular family physician, was away on vacation. Dr. Gulden diagnosed the plaintiff's injury as a right-sided lumbar back strain, prescribed Flexeril and Naprosyn, and advised her to remain out of work for one week.
6. Plaintiff began treating with Thomas Frazer, M.D., her regular physician, on July 23, 1993. Dr. Frazer diagnosed the plaintiff's condition as persistent back pain and scheduled a CT scan. This CT scan was found to be within normal range. Dr. Frazer prescribed different medication and recommended that the plaintiff begin a course of physical therapy and remain out of work for several more weeks. Thereafter, Dr. Frazer referred plaintiff to R. Mark Rodger, M.D., an orthopedic physician, for a second opinion because plaintiff had not obtained any relief from her pain.
7. Plaintiff began physical therapy at Wilkes Regional Medical Center on August 2, 1993 and sought treatment from Dr. Rodger on September 30, 1993. Dr. Rodger noted that plaintiff's MRI scan showed some disk bulging but opined that this should not be the cause of her extensive back and lower extremity pain. He also noted that because the plaintiff's pain was so severe, she would not be a good candidate for a rehabilitation program. He recommended pain clinic management and an aggressive physical therapy program for the plaintiff.
8. Plaintiff sought medical care from the Davis Community Hospital Pain Management Clinic on October 13, 1993, where she was treated by Dr. Douglas D. Pritchard, and Dr. Gregory H. Crisp. Dr. Pritchard administered an epidural injection on this date. Dr. Crisp diagnosed myofascial pain, ligamentous strain, trochanteric bursitis, SI joint pain and a bulging disk. He opined that plaintiff's pain may be of discogenic origin but that there was no obvious need for surgical intervention. He recommended that plaintiff undergo a neurological consultation from Dr. Eugene Benjamin, a neurologist.
9. Dr. Eugene Benjamin performed a neurological evaluation of the plaintiff on November 29, 1993. He diagnosed plaintiff with chronic lumbar strain and lumbar pain syndrome and also noted that plaintiff had a great deal of stress and/or emotional overlay. He did not recommend further neurologic testing and opined that stress management and positive reinforcement would most likely benefit plaintiff.
10. Plaintiff was evaluated by Dr. David L. Kelly, a neurosurgeon at the Bowman Gray School of Medicine on December 29, 1993. Dr. Kelly requested an MRI of the thoracic spine and a CAT scan of the head; both reported normal findings.
11. According to a telephone contact recorded by Dr. Frazer on February 2, 1994, plaintiff was still in physical therapy but was off all medication except for occasional Tylenol. At the time of hearing, plaintiff was still under her doctor's care and had not been released to return to work.
12. Plaintiff injured her back while performing her work duties with defendant-employer on July 4, 1993 between 3:00 P.M. and 4:00 P.M. At the time of her injury, plaintiff's work duties included lifting patients weighing up to 200 pounds with the assistance of one other female co-worker. Said injury resulted from a specific traumatic incident during a cognizable period of time.
13. As a result of her injury plaintiff has been unable to earn any wages in the same or any other employment since July 5, 1993.
* * * * * * * * * * *
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained an injury to her back as a direct result of a specific traumatic incident during a cognizable period of time on July 4, 1993 while working for defendant-employer. Plaintiff's injury constituted an injury by accident arising out of and in the course of her employment and is compensable. N.C.G.S. § 97-2(6). Fish v. Steelcase, Inc., N.C. App. 9310IC1074, filed November 1, 1994.
2. As a result of her injury, plaintiff has been incapable of earning wages in the same or any other employment since July 5, 1993. Plaintiff is entitled to temporary total disability compensation from July 5, 1993 and continuing until her incapacity to earn wages ceases. N.C.G.S. § 97-29.
3. Plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred as a result of her compensable injury. N.C.G.S. § 97-25.
4. The issue of what amount of permanent disability, if any, is due the plaintiff, shall be reserved for subsequent determination.
5. Plaintiff's average weekly wage yields a compensation rate of $137.57 per week.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to counsel fee as hereinafter awarded, defendants shall pay temporary total disability compensation to plaintiff at the rate of $137.57 per week from July 5, 1993 through the date of hearing on May 11, 1994 and continuing thereafter until plaintiff returns to work or defendants obtain permission from the Industrial Commission to cease payments of temporary total disability. As much of such compensation as has accrued shall be paid in one lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury when bills for same have been submitted through defendants and approved by the Industrial Commission, so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief and/or will tend to lessen plaintiff's period of disability.
3. An attorney's fee in the amount of twenty-five percent of any lump sum amount awarded plaintiff herein shall be deducted and paid directly to plaintiff's counsel. Additionally, every fourth check payable to plaintiff shall be deducted and paid directly to plaintiff's attorney.
4. Defendants shall pay the costs.
FOR THE FULL COMMISSION
 S/ _________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________ THOMAS J. BOLCH COMMISSIONER
CMV/cnp/mj 6/27/96